```
                UNITED STATES DISTRICT COURT
              FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
                        WESTERN DIVISION
```

UNITED STATES

VERSUS                                CRIMINAL NO. 4:09cr8-DCB-LRA

TOMAS CRUZ and
MIGUEL ESCOBAR-HERNANDEZ                                 DEFENDANTS

## ORDER

This matter comes before the Court on defendants' Motion to Suppress [**docket entry no. 41**]. Having carefully considered the Motion, the defendants' Response thereto, testimonial evidence, applicable statutory and case law, and being otherwise fully advised in the premises, the Court finds and orders as follows:

### I. Factual History

On March 28, 2009, Miguel Escobar-Hernandez ("Hernandez" or "defendants") and Tomas Cruz ("Cruz" or "defendants") were arrested by officers of the Meridian Police Department and charged with a violation of 21 U.S.C. § 841(a)(1), knowingly and intentionally possessing with the intent to distribute a controlled substance. Hernandez and Cruz were traveling east in a Ford Mustang on Interstate 20 when they were stopped east of Meridian, Mississippi, by Officer Hill for crossing over the "fog line" two times. Hernandez was driving and Cruz was the passenger. Officer Hill requested that Hernandez exit the vehicle and then he proceeded to question both defendants separately. Hernandez stood in front of the patrol car and Cruz remained in the passenger seat of the Ford

Mustang.

Each defendant gave differing accounts of their reasons for traveling and where they were going. Hernandez told the officer they were traveling to Memphis, Tennessee. When Officer Hill informed Hernandez that Memphis was in the opposite direction, Hernandez responded, "I don't know then." Cruz told the officer that they were traveling to Tuscaloosa, Tennessee, and that they were suppose to call someone when they arrived to find out where to go work. Both defendants told the officer that they were going to do painting and sheet rock work. However, Hernandez said they were staying for 2-3 days while Cruz said they were staying for 2-3 months. Moreover, the vehicle registration and insurance papers were in two different names and neither Hernandez or Cruz owned the vehicle.

After the vehicle check was completed but before Officer Hill returned Hernandez his license and a written warning, he asked Hernandez if there was anything illegal in the vehicle. Hernandez responded, "no" and the officer asked if he could search the vehicle. Both Hernandez and Cruz consented to the search. By this time, another officer had arrived on scene and both officers searched the interior and exterior of the vehicle. One officer noticed that the bolts attaching the gas tank to the frame were worn and had been previously removed. The officers then asked the defendants to follow them to the police maintenance barn for a

further search of the vehicle. The defendants complied.

At the maintenance barn, a K-9 was used to sniff the car and alerted at the rear of the vehicle. The gas tank and rear bumper were then searched and the officers found 8 kilos of cocaine and 5 kilos of heroine inside the rear bumper of the vehicle.

## II. Analysis

*1. Reasonable Suspicion to Prolong the Stop*

The defendants do not challenge the reasonableness of the initial stop, rather, the defendants argue that the officer did not have reasonable suspicion to prolong the stop after the original purpose of the stop was concluded. "[A] search is not reasonably related to the circumstances justifying a traffic violation stop when the search in question occurs after the time required for an officer to issue a citation (or decide against doing so) and to complete a 'computer check' for outstanding warrants and vehicle theft." U.S. v. Cavitt, 550 F.3d 430, 436 (5th Cir. 2008). In U.S. v. Santiago, 310 F.3d 341-342 (5th Cir. 2004), the court stated that during a traffic stop, an officer can 1) request a driver's license, insurance papers, and vehicle registration; 2) run a computer check and issue a citation; and, 3) detain and question the subjects of the stop while a license check is being run. However, "in order to prolong a detention after issuing a citation or determining that no citation should be issued, an officer must have a 'reasonable suspicion' that a crime 'has been

3

or is being committed.'" Cavitt, 550 F.3d at 436. Reasonable suspicion "exists when the detaining officer can point to specific and articulable facts that, when taken together with rational inferences from those facts, reasonably warrant the search and seizure." Id. (citing U.S. v. Estrada, 459 F.3d 627, 631 (5th Cir. 2006)). The reasonable suspicion used to justify prolonging the stop must be "additional to the suspicion that justified the initial stop." Id. The reasonableness of the prolonged detention is "measured in objective terms by examining the totality of the circumstances." U.S. v. Escareno-Sanchez, 507 F.3d 877, 882 (5th Cir. 2007)(vacated on other grounds, 128 S. Ct. 2428 (2008)).

In the instant case, the underlying facts, when taken together, created reasonable suspicion to detain the defendants beyond the time necessary to execute a written warning. First, when asked by the officer where they were going, Hernandez said Memphis, Tennessee. When Officer Hill explained that they were traveling east toward Alabama, which is not the correct route to Memphis, Hernandez replied, "I don't know then." When Officer Hill questioned Cruz separately, Cruz stated they were going to Tuscaloosa, Tennessee. Second, when asked how long their trip would last, Hernandez said 2-3 days. Cruz said 2-3 months. Third, the vehicle registration and insurance papers were in two different names, neither of which was Hernandez or Cruz. Fourth, Hernandez stated that the vehicle belonged to Cruz, but Cruz denied owning

4

the vehicle.

Courts have established that mere uneasy feelings on the part of the officer or inconsistent stories between a driver and passenger cannot, standing alone, provide reasonable suspicion to extend an otherwise lawful detention. <u>Cavitt</u>, 550 F.3d at 437; <u>Estrada</u>, 459 F.3d at 631. However, the facts previously stated, considered in conjunction with the officers narcotics interdiction training, on-the-job experience consisting of over 100 interdiction traffic stops and knowledge that Interstate 20 between Meridian, Mississippi, and Atlanta, Georgia, is a common drug-trafficking route, would create in the mind of a reasonable police officer and in fact did create for Officer Hill, reasonable suspicion for further inquiry.

Even if this were not so, however, the defendants were not detained in an unreasonable and unconstitutional manner beyond the time required for the officer to give a written warning. Officer Hill testified that it was within his discretion to give a citation or a warning, and he elected to give a warning. As could be seen and heard on the video, the warning was written by Officer Hill outside of his vehicle, in the presence of Hernandez. Immediately upon completion of the process, but before the warning was tendered to Hernandez, the officer inquired as to whether any illegal narcotics were in the vehicle. When Hernandez responded "no," and shook his head back and forth while looking at the ground, the

officer asked if he could search the vehicle. Both Hernandez and Cruz consented to the search. Therefore, the Court finds that the detention and questioning of the defendants was simultaneous with the warning process and any detention beyond that point was supported by reasonable suspicion.

*2. Voluntary Consent to Search the Vehicle*

A search may not constitute a Fourth Amendment violation "even when reasonable suspicion does not justify a search." Cavitt, 550 F.3d at 438. Furthermore, "[c]onsensual encounters 'do not implicate Fourth Amendment concerns,' and 'a consensual interrogation may follow the end of a valid traffic stop.'" Id. (citing U.S. v. Brigham, 382 F.3d 500, 508 (5th Cir. 2004)).

The video shows that both Hernandez and Cruz consented to a search of the vehicle. The Court must determine whether the consent was an act of free will or a product of illegal detention. In U.S. v. Estrada, 459 F.3d 627, 333 (5th Cir. 2006), the Fifth Circuit clearly stated that the voluntariness of consent is a question of fact to be determined by the totality of the circumstances. Six factors are considered in determining whether consent is voluntary, although no single factor is dispositive. Cavitt, 550 F.3d at 439.

(1) *The voluntariness of the defendants custodial status*. The Court finds that the initial stop was made at or about 9:45 a.m. on March 28, 2009, on Interstate 20 east of Meridian, Mississippi. At

about 10:00 a.m. or approximately four minutes thereafter, Officer Hill asked the defendants if he could search the vehicle. Both of the defendants answered, yes. The request to search came within seconds of the completion by Officer Hill of writing the warning citation. Considering all circumstances, it would be unreasonable to conclude that the custodial status of the defendants was extended beyond the time necessary to complete the warning process. Even if this were not so, there were underlying facts, which when taken together, created reasonable suspicion for detention beyond the time reasonably necessary to execute the warning. The defense points to the fact that Officer Hill returned to his vehicle and argues that he remained in his vehicle until assistance arrived before writing the warning. However, the entire process - the initial stop until Officer Hill inquired to search the vehicle - only took 18-20 minutes. Therefore, the defendants were not detained for an unreasonable amount of time to complete the vehicle check and warning. U.S. v. Brigham, 382 F.3d 500, 511 (5th Cir. 2004)(holding there is "no constitutional stopwatch on traffic stops," and officers must "diligently pursue[] a means of investigation . . . likely to confirm or dispel their suspicions quickly").

Furthermore, Officer Hill asked to search immediately after he had inquired about illegal drugs in the vehicle. Therefore, the defendants knew that the purpose of the search was for illegal

7

narcotics. Yet, they still consented.

(2) *The presence of coercive police procedures*. No coercive procedures and investigatory techniques were used in this case. The entire episode was captured by video and most of it by audio. Although Officer Hill was solicitous, he was also courteous and undemanding, and there was no evidence whatsoever of duress or arm-twisting.

(3) *The extent and level of the defendant's cooperation with the police*. The colloquy between both defendants and Officer Hill was normal discourse in a traffic stop situation. The defendants were cooperative with the officer and the officer with them. Hernandez is fluent in English and clearly understood the questions posited by the police. Cruz, although he requested a translator for the Evidentiary Hearing, clearly understood the questions asked by Officer Hill during the stop and responded to Officer Hill in English.

(4) *The defendant's awareness of his right to refuse consent*. The Court recognizes that the right to refuse consent was never articulated to the defendants. However, the manner in which the question was asked would lead any reasonable person to understand that the response could be affirmative or negative. Furthermore, neither defendant hesitated or acted confused when consenting to the search. Moreover, there was no misrepresentation by Officer Hill as to the purpose of the search.

(5) *The defendant's education and intelligence*. The education of the defendants is not a part of the record, but the they clearly understood the police inquiry and responded intelligently in English, indicating that there was no lack of awareness or confusion.

(6) *The defendant's belief that no incriminating evidence will be found*. During the entire stop, except for the search of the vehicle, Hernandez was outside the vehicle while Cruz remained in the passenger seat. Although Hernandez appeared somewhat restless throughout the process, he appeared to be no more unnerved by the stop, the questioning and the detention than any normal person who is the subject of a traffic stop. The Court notes that during the Evidentiary Hearing, Officer Hill testified that his suspicions were aroused because of the nervous demeanor of one or both defendants. Although restless, as indicated, there is nothing in the video or audio which would indicate, one way or another, that the defendants knew illegal narcotics were in the vehicle.

After consideration of the six factors discussed previously, the Court finds that the defendants' consent to search the vehicle was voluntarily and the search was not a violation of the Fourth Amendment.

The defendants also contend that their consent to follow the officers to the maintenance barn for a continuation of the search of the vehicle was not voluntary, and therefore evidence found at

9

the barn should be suppressed.

During the search alongside the interstate, the officers found evidence that the gas tank had been tampered with and possibly removed. Officer Hill testified that the bolts holding the gas tank in place were worn with tool marks, and he knew it had been removed because he had made a similar stop before with same type of gas tank. After finding evidence that the gas tank had been removed, Officer Hill asked the defendants to follow him and the other officer to the maintenance barn which was 10 minutes away. After arriving at the barn, Officer Hill had a K-9 sniff the exterior of the car, and the dog alerted at the rear of the vehicle. The officers then raised the car and searched inside the gas tank and rear bumper, finding 8 kilos of cocaine and 5 kilos of heroine stored inside the rear bumper.

Probable cause to search exists "where the known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found." Ornelas v. U.S., 517 U.S. 690, 696 (1996). "A police officer may draw inferences based on his own experience in deciding whether probable cause exists." Id. at 700. Evidence of prior removal and other tampering with the gas tank, taken together with the officer's experience in narcotics training and interdiction, his knowledge that Interstate 20 was a common drug trafficking route, the defendants' inconsistent stories, the different names on

the insurance papers and vehicle registration, and the lack of ownership by either defendant of the vehicle, provided Officer Hill with probable cause to move the vehicle to the maintenance barn for further search of the gas tank. Additionally, the alert by the K-9 at the rear of the vehicle provided probable cause to search in the gas tank and rear bumper. See U.S. v. Khanalizadeh, 493 F.3d 479, 484 (5th Cir. 2007)(holding that evidence of a hidden compartment taken in conjunction with other factors provides probable cause to take car to mechanic's shop for search); Estrada, 459 F.3d at 633 ("under law of this circuit, evidence of a hidden compartment supports 'probable cause' for a search/arrest")(citations omitted); DeMorua v. U.S., 129 F.3d 125, 1997 WL 697382, *3 (9th Cir. 1997)(holding that scratches around the gas tank nozzle and tank and shiny marks on the bolts indicated that a gas tank had been removed, and considered in light of other factors, constituted probable cause to transfer vehicle to border patrol station for a dog sniff).

The defense also argues that because the officers did not perform the K-9 sniff along the interstate, they did not have probable cause to move the vehicle for a continuation of the search. Although the officers could have used the K-9 while searching alongside the interstate, it was not unreasonable to move the vehicle before using the K-9. Considering that they were in a dangerous place beside the interstate and that any reasonable

11

person would feel uncomfortable in a public place with a narcotics K-9 searching their vehicle, the officers decision to move the vehicle to the maintenance barn to continue the search was not unreasonable. Also, as previously stated, the officers had probable cause to search the gas tank due to their belief that it contained narcotics and performing that search alongside the interstate was not possible.

Because the Court concludes that the defendants' initial consent to search was voluntary and the officers had probable cause to detain the defendants for a continuation of the search at the maintenance barn, the Court need not analyze the voluntariness of the defendants' consent to follow the officers to the barn to continue the search.

### III. Order

**IT IS HEREBY ORDERED** that the defendants' Motion to Suppress [**docket entry no. 41**] is **DENIED**.

**SO ORDERED**, this the 21st day of October 2009.

                                       s/ David Bramlette
                               **UNITED STATES DISTRICT JUDGE**